## SOLOMON DUNHAM v. MICHAEL LEE.

### *Trespass. Bailment. Fraud.*

Where, by the terms of a written contract, B. has no power to sell a horse that A. has conditionally put into B.'s hands. If B. sells the horse, the very act of sale terminates the bailment, and A. has the right to take immediate possession, even if part of the purchase money has been paid, and retain it until the balance of the purchase money is paid.

And if B. had a right to sell, and the sale was so tinctured with fraud as to be voidable at the election of B., then A., as principal vendor, might do it.

TRESPASS for taking a certain mare. Plea general issue, and trial by jury.

On the trial the plaintiff, for the purpose of showing property in the mare, introduced a certain written contract, which was executed by one James Putney to the plaintiff, by the terms of which, the said Putney was to keep said mare six months and if he then paid the plaintiff twenty-five dollars, he was to have the mare one year more, and if he paid twenty-five dollars more at the end of said year the mare was to be the property of said Putney. The plaintiff then proved that the mare was immediately put into said Putney's possession and remained in his possession until the spring of 1850, when said Putney exchanged said mare and a harness with the defendant for a watch, and that the plaintiff took the mare out of the possession of the defendant and put her into the possession of one Bailey Putney, father of said James Putney, and in the same place where she had previously been kept for said James, and contracted with said Bailey Putney for the keeping of the mare for himself, the plaintiff; and that soon after the defendant took said mare out of said Bailey Putney's possession, which is the taking complained of.

The defendant introduced testimony tending to prove, that the plaintiff authorized said James Putney to trade said mare off, if he made a good trade and did not get cheated.

The plaintiff offered testimony tending to prove, that in making said exchange of said watch for said mare and harness, the defendant practiced fraud upon the said James, who was young and inexperienced, and among other things, that said mare was worth sixty dollars and said harness seven dollars, while on the other

Dunham *v.* Lee.

hand the watch, which the defendant exchanged therefor, which was apparently gold, was not really such, was of little or no value, not exceeding from three to five dollars, as was then well known to the defendant, but who represented the same to said James as of the value of sixty-five. To which the defendant objected, but the court admitted the testimony, to which defendant excepted.

The defendant introduced testimony tending to show, that before said exchange by said James to the defendant, he had paid plaintiff towards said mare, thirty-three dollars.

The defendant insisted as matter of law, and requested the court to charge the jury, that if the plaintiff gave said James Putney any license to sell the mare, he could not sustain this action.

The defendant further insisted, that if the first installment had been paid by said James, the plaintiff could not sustain this action, inasmuch as the time for which he had parted with the right of possession to the mare, by said writing had not expired.

The court declined so to charge the jury, but did charge them that the general property in said mare remained in the plaintiff, notwithstanding her possession by said James under said writing, and although said James had paid thirty-three dollars towards her, and that no license which the testimony tended to prove, as given by the plaintiff to said James Putney to sell the mare, would justify or sustain the defendant in acquiring this right or title of the plaintiff, by fraud practiced on James. If the jury found that in making said exchange the defendant was guilty of fraud, (so explaining what constituted fraud, that no exception was taken thereto,) then the plaintiff was justified in reclaiming possession of said mare, notwithstanding the time mentioned in said writing had not expired, and that for the taking by the defendant afterwards the plaintiff could sustain this action.

Exceptions by defendant, after verdict and judgment for plaintiff.

*P. Perrin* and *J. P. Kidder* for defendant.

1. The case finds that the mare was in the possession of the bailee Putney under contract, and for a specified time which had not elapsed, and we contend that the plaintiff, (having parted with his possession by contract for a given time,) had neither the possession, or right of possession sufficient to enable him to sustain this action though he had the general property in the mare. *Soper* v. *Sumner et al.*, 5 Vt. 274.

2. The bailee had done nothing which was sufficient in law to determine the bailment, having done nothing but what the plaintiff authorized him to do " if he did not get cheated," and who shall determine the question whether he got cheated or not, the plaintiff or the law?

3. The taking by the defendant would not terminate the bailment so as to enable the plaintiff to sustain this action. It must be terminated by the act of the bailee. *Swift* v. *Mosely et al.*, 10 Vt. 208.

4. If the plaintiff gave permission to the bailee to dispose of the mare, as found by the exceptions, the sale would divest the plaintiff of even his general property in the mare.

5. The taking of the mare by the plaintiff out of the defendant's possession was in his own wrong, and gave him no additional right of possession.

6. The mare having been taken by the defendant from the same place where she had been previously kept by the bailee, there had been no change of possession.

7. Even if there were fraudulent representations on the part of the defendant in his trade with the bailee, still we are unable to perceive how that can effect the parties to this suit.

8. If there was fraud in the trade between defendant and the bailee it seems to be a mutual fraud. One practiced deceit in relation to the ownership of property, and the other in relation to value only, and the bailee did it by permission of the plaintiff.

*J. S. Marcy* and *C. M. Lamb* for plaintiff.

The contract between plaintiff and James Putney as evinced by the receipt, was in the nature of a bailment; such was its character and legal effect.

At the time James disposed of the mare, as stated in the bill of exceptions, the *condition*, in his contract of purchase with the plaintiff, on the performance of which the mare was to become the property of said James, had never been fulfilled or performed by said James; and a sale by him of the mare, under such circumstances, determined the bailment. *Bigelow* v. *Huntley*, 8 Vt. 151. *Swift* v. *Moseley*, 10 Vt. 208. *Grant* v. *King et al.*, 14 Vt. 367.

If James undertook to sell the mare under the supposed authority of the plaintiff, he acted in the matter as plaintiff's agent, and, in-

Dunham *v.* Lee.

dependently of the written receipt; and to make the sale effectual so as to bind the principal, the agent must in all things strictly follow his, the principal's, direction and authority; which the said James in this case did not do. 2 Kent's Comm. 620,621. *Huntington, Administrator* v. *Wilder,* 6 Vt. 334.

In attempting to sell the mare under the authority of the plaintiff, James *committed the very thing inhibited.* The sale was wholly unauthorised and conveyed no title in the mare to the defendant; and the bailment being determined by such sale by Putney, this gave the plaintiff the right to reclaim his property, although the period of the original bailment, as shown by the receipt, had not expired. *Bigelow* v. *Huntley,* 8 Vt. 151. U. S. Dig. Vol. 1, p. 243, ps. 60, 68, 69. *Swift* v. *Moseley,* 10 Vt. 208. *Sargent* v. *Gile,* 8 N. H., 322.

The fraud, as shown by the case and found by the jury, *vicious, as it was in the extreme,* prevented the defendant from acquiring any property in the mare. *Hodgenden* v. *Hubbard et al.,* 18 Vt. 504.

In the charge of the county court as given, and refusal to charge as requested, there is no error.

1. The principles applicable to conditional sales and to those cases also where *part payment* has been made, and the rights and liabilities of parties under such sales, have been fully settled by this court in accordance with the decision. *West* v. *Bolton,* 4 Vt. 558. *Smith* v. *Foster,* 18 Vt. 182. *Buckmaster* v. *Smith,* 22 Vt. 203.

2. Fraud invalidates and renders void all contracts tainted therewith; and the purchaser of property, who obtains the *temporary possession* thereof, by means of *fraudulent and false representations,* acquires no valid title to or legal possession of such property; and the right to reclaim property thus fraudulently obtained, exists and remains in the original owner. *Keyes* v. *Carpenter,* 3 Vt. 209. *Hodgenden* v. *Hubbard et al.,* 18 Vt. 504. *Fitzsimmons* v. *Joslin,* 21 Vt. 129.

By the Court. 1. By the terms of the written contract, which is conclusive, as between plaintiff and James Putney, he had no right to sell the colt, at all. As between them the very act of sale by Putney, terminated the bailment and gave plaintiff the right to take immediate possession and to retain it until paid the balance of the purchase money.

2. So too his having taken possession, under a claim of right, and this being acquiesced in by Putney, the plaintiff's possession is sufficient to enable him to maintain trespass against defendant for his retaking the animal, unless he can show a better right.

3. The defendant's right is based upon his purchase, which is so tinctured with fraud, as to be voidable at the election of the vendor, Putney, if he had a right to sell under a power from plaintiff, might himself avoid his own sale for such a fraud as was shown in this case, or plaintiff might do it, as the principal vendor, and on this ground alone the defendant's right would thus terminate.

4. The defendant claims no benefit of Putney's right of possession, for he did not profess to buy that. His claim, if maintained at all, must stand upon the power of sale, which he proved, and Putney's sale to him failed in meeting either alternative of the power. It was neither a good trade, or without being cheated.

Had the written bill of sale, contained in express terms, a power in Putney to sell the beast, although restricted to a certain price or in other respects, no doubt a sale made by him, which was valid as against him, would be also valid as against the plaintiff. But in this case the sale to the defendant was so fraudulent, as not to be binding upon Putney had he owned the property, and if not upon him, then the plaintiff, as the principal, might well assume to rescind it. Judgment affirmed.